# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRADLEY B. VALENTINE, | : | CIVIL NO: 1:14-CV-00265 |
| | : | |
| Petitioner, | : | (Judge Rambo) |
| | : | |
| v. | : | |
| | : | |
| DANIEL KEEN, | : | |
| | : | (Magistrate Judge Schwab) |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

The petitioner, Bradley Valentine ("Valentine"), filed a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his parole revocations and his underlying sentence for driving under the influence ("DUI"). Before the Court is respondent's motion to dismiss Valentine's petition for his failure to exhaust state remedies. Having reviewed Valentine's petition, along with the parties' arguments, and relevant exhibits, we recommend that the respondent's motion be granted in part and denied in part. We also recommend, *sua sponte*, that Valentine's claim attacking the constitutionality of his DUI sentence be dismissed as untimely.

I.    **Background and Procedural History**.

With respect to this case, the undisputed facts set forth in the petition (*Doc.* 1), respondent's motion (*Docs.* 10 & 10-3), and the respondent's exhibit (*Doc.* 10-1), reveal that on June 23, 2010, Valentine pleaded guilty in the Franklin County Court of Common Pleas, to a Tier III, second offense, charge of DUI.  On August 11, 2010, Valentine subsequently received a sentence between 90 days and 60 months in jail.  Furthermore, respondent contends, and our own research reveals, that no direct appeal was ever filed, nor did Valentine file a petition pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA").

On October 8, 2010, two months after Valentine was sentenced, he was granted parole.  Two years later, however, in January 2012, Valentine's parole was revoked when he stipulated to violating conditions of his parole at his *Gagnon I* hearing.[1]  In addition, Valentine waived his right to request a *Gagnon II* hearing.

---

[1]    In *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973), the Supreme Court held that "a probationer, like a parolee, is entitled to a preliminary and final revocation hearing under the conditions specified in *Morrissey v. Brewer*, [408 U.S. 471 (1972)]."  The first, a *Gagnon I* hearing, serves to determine whether there was probable cause for parole revocation. *See Gagnon*, 411 U.S. at 782.  The second, a *Gagnon II* hearing, determines whether the person in fact violated the conditions of his or her parole and whether (s)he should be incarcerated. *See Commonwealth v. Sims*, 770 A.2d 346, 349 (Pa. Super. Ct. 2001) (citing *Gagnon*, 411 U.S. at 784).

As a result, Valentine was directed to serve the balance of his originally imposed sentence, 57 months and 29 days, computed from January 1, 2012.[2]

Then, in May 2012, Valentine was paroled on a second occasion. This time Valentine remained on parole until December 11, 2012, when he was found in violation of parole at a *Gagnon I* hearing. Valentine also waived his right to request a *Gagnon II* hearing. Consequently, Valentine was directed to serve the balance of his originally imposed sentence, 53 months and 22 days, computed from December 3, 2012.

Thereafter, on April 12, 2013, Valentine was granted parole on yet another occasion. On March 5, 2014, however, Valentine was again found in violation of parole for changing his residence without permission and for failing to pay fines and costs. Valentine, thus, was directed to serve the balance of the sentence originally imposed, which was 49 months and 8 days. According to the most recent version of his docket sheet, in *Commonwealth v. Valentine*, CP-28-CR-0001032-2010, Valentine has since been granted parole again.[3] There is no

---

[2]      Each time Valentine's parole was revoked his maximum release date was extended. In other words, he was not given credit for the time he spent on parole. According to Valentine, these extensions of his maximum release date violated the Constitution.

[3]      An updated copy of Valentine's docket sheet is available through Pennsylvania's Unified Judicial Docket System docket research at: http://ujsportal.pacourts.us/.

evidence demonstrating that Valentine took any action to appeal his parole revocations.

On February 14, 2014, prior to his most recent parole revocation, Valentine filed the federal habeas petition under review and paid the filing fee. *Doc.* 1. Liberally construing his petition, Valentine, at the end, contends that his sentence for DUI is "illegal," because it was only his second DUI within nine years. *Id.* at 9. The crux of Valentine's petition, however, is aimed at his parole revocations. According to Valentine, at his *Gagnon I* hearings, he was denied certain due process protections including the right to cross-examine witnesses and the right to counsel. Valentine also sets forth that the extension of his maximum sentence date, when his parole was revoked on each occasion, subjected him to double jeopardy in violation of the Fifth Amendment and otherwise violated traditional notions of due process. By way of remedy, Valentine seeks to have his original maximum sentence date re-imposed, to be released from custody, and have his sentence for DUI vacated for purposes of resentencing. *Id.*

After Valentine filed this federal habeas corpus petition, we ordered Valentine to fill out an election form, pursuant to the Third Circuit's mandate in *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000). *Doc.* 3. On March 3, 2014, Valentine returned the form, electing to proceed on his petition as filed. *Doc.* 4. Respondent was then ordered to answer Valentine's petition. *Doc.* 5.

On April 23, 2014, respondent did not file an answer, but filed a motion to dismiss for Valentine's failure to exhaust state remedies.  *Doc.* 10.  Subsequently, we entered an order deferring respondent's answer until the pending motion, which is ripe for review, has been resolved.  *Doc.* 12.

## II.     <u>Relevant Legal Standards.</u>

The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law, and a habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a state prisoner to challenge the "fact or duration" of his confinement on the ground that he or she is in custody, in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Preiser v. Rodriguez*, 411 U.S. 475, 498–99 (1973); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Johnson v. Rosemeyer*, 117 F.3d 104, 114 (3d Cir. 1997).  Thus, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68.

Given the supreme nature of the writ, federal courts reviewing habeas corpus petitions must be vigilant and independent, a commitment that entails substantial judicial resources.  To accomplish this great task, "[f]ederal habeas courts reviewing the constitutionality of a state prisoner's conviction … are guided by [certain] rules designed to ensure that state-court judgments are accorded the

finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 132 S.Ct. 1309, 1316 (2012).

**A. Statute of Limitations.**

Among the relevant habeas corpus rules is the requirement that petitioners timely file petitions seeking habeas corpus relief.  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244 established a one-year statute of limitations on the filing of habeas petitions by state prisoners.   In pertinent part, § 2244(d)(1), provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Additionally, 28 U.S.C. § 2244(d)(2), provides that:

> The time during which a properly filed application for State
> postconviction or other collateral review with respect to the
> pertinent judgment or claim is pending shall not be counted
> toward any period of limitation under this subsection.

In assessing § 2244(d)(2)'s tolling provision relating to the time when a case is "pending" state review, it is clear that "the term 'pending' must include the time between a court's ruling and the timely filing of an appeal, [and] 'pending' must include the time during which an appeal could be filed even if the appeal is not eventually filed." *Swartz v. Meyers*, 204 F.3d 417, 424 (3d Cir. 2000). Thus, the courts have construed this tolling provision in a forgiving fashion, and in a manner which enables petitioners to toll their filing deadlines for the time periods in which they could have sought further direct appellate review of their cases, even if they did not, in fact, elect to seek such review. *Swartz*, 204 F.3d at 424-25.

Moreover, for purposes of tolling the federal habeas statute of limitations, a "properly filed application for State post-conviction or other collateral review" only includes an application which is filed in a timely fashion under state law. Therefore, if the petitioner is delinquent in seeking state collateral review of his conviction, that tardy state pleading will not be considered a "properly filed application for State postconviction or other collateral review" and will not toll the limitation period. *Pace v. DiGuglielmo*, 544 U.S. 408, 412-14 (2005); *Long v. Wilson*, 393 F.3d 390, 394-95 (3d Cir. 2004).

7

AEDPA's one-year limitation period, however, is not a jurisdictional bar to the filing of habeas petitions; *Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 617-18 (3d Cir. 1998), and, therefore, is subject to equitable tolling.  *Id*. Yet, while equitable tolling is permitted in state habeas petitions under AEDPA, it is not favored.  As the Third Circuit has observed: "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.'  Generally, this will occur when the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.'  The petitioner must [also] show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.'  Mere excusable neglect is not sufficient." *Id*. at 618-19 (citations omitted).

The decision to equitably toll § 2244(d), "must be made on a case-by-case basis."  *Holland v. Florida*, 560 U.S. 631, 649-50 (2010) (quoting *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964)).  "In each case, there is a need for 'flexibility,' 'avoiding mechanical rules,' and 'awareness ... that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.'" *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011) (quoting *Holland*, 130 S.Ct. at 650).  Thus, there are "no bright lines in determining whether equitable tolling is warranted in a given case." *Id*.

8

**B. Exhaustion and Procedural Default.**

Assuming that a ground for habeas relief is timely, state prisoners must also exhaust available State court remedies before seeking relief. 28 U.S.C. §§ 2254(b)-(c); *see also Cone v. Bell*, 556 U.S. 449 (2009); *Rose v. Lundy*, 455 U.S. 509, 515–20 (1982); *Toulson v. Beyer*, 987 F.2d 984, 986 (3d Cir. 1993); *Gibson v. Scheidemantel*, 805 F.2d 135, 138 (3d Cir. 1986). This general rule promotes the interests of comity and finality by providing State courts with the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999).

In order for a claim to be exhausted, it must have been fairly presented to the State courts through "one complete round of the State's established appellate review process." *Nara v. Frank*, 488 F.3d 187, 197 (3d Cir. 2007) (internal citations and quotation marks omitted). To do so, a petitioner need only "describe in the state proceedings both the operative facts and the federal legal theory on which his claim is based so that the State courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Alongsi v. Ricci*, 367 F. App'x 341, 345 (3d Cir. 2010)(quoting *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008) (internal citations and quotation marks omitted)).

The petitioner bears the burden of demonstrating that he or she has satisfied the exhaustion requirement. *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000).

This exhaustion rule requires a federal court to dismiss without prejudice habeas petitions that contain any unexhausted claims. *Slutzker v. Johnson*, 393 F.3d 373, 379 (3d Cir. 2004). Nevertheless, for claims that were not fairly presented to the State court, but for which "further state-court review is clearly foreclosed under state law, exhaustion is excused on the ground of futility." *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001). Although futile claims are deemed exhausted for federal habeas purposes, such claims are also procedurally defaulted; federal courts are not permitted to evaluate the merits of procedurally defaulted claims unless the petitioner "establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse [the] default." *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *see also Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991).

To demonstrate "cause" for a procedural default, the petitioner must show that "'some objective factor external to the defense ... impeded [his or her] ... efforts to comply with the ... [state] procedural rule.'" *Leyva v. Williams*, 504 F.3d 357, 366 (3d Cir. 2007) (quoting *Slutzker*, 393 F.3d at 381); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). By way of example, showing that a factual or legal basis for a claim was not reasonably available to counsel or showing interference by

government officials sufficient to make compliance impracticable, would constitute acceptable cause for federal habeas review of the defaulted claim. *Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000)(citing *Murray*, 477 U.S. at 488).   A claim of ineffective assistance of counsel has been deemed by the Supreme Court to fall within this standard. *Id.*   The exhaustion doctrine generally requires, however, that an ineffective-assistance claim "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id.* (citing *Murray* at 488-89).   With regard to the prejudice requirement, the habeas petitioner must prove "not merely that the errors at … trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494.

As stated, a federal court may also excuse procedural default when its failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger*, 266 F.3d at 224.   The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

11

### III. **Discussion.**

As mentioned, Valentine challenges the constitutionality of his DUI sentence and his parole revocations. Respondent, however, has filed a motion to dismiss for Valentine's failure to exhaust his state remedies.

#### A. **Respondent's Motion to Dismiss.**

In respondent's motion, he only seeks dismissal of Valentine's claims pertaining to his challenge to the parole revocations. *See Doc.* 10 at ¶¶ 3-5. Respondent does not identify or mention Valentine's challenge to his DUI sentence. Perhaps this is so because Valentine buried said challenge deep into his habeas petition, *see Doc.* 1 at 9, after detailing the perceived violations that occurred at his revocation hearings. For present purposes, therefore, we will focus solely upon Valentine's challenge to his parole revocations.

Valentine bears the burden of establishing that he exhausted all state remedies. *Lines*, 208 F.3d at 159; *Parker v. Kelchner*, 429 F.3d 58, 62 (3d Cir. 2005). Furthermore, the legal standards cited above, relating to exhaustion, apply with equal force to this specific factual context where Valentine is complaining about errors that allegedly occurred in a parole determination. *See Defoy v. McCullough,* 393 F.3d 439 (3d Cir. 2005); *United States ex rel. D'Agostino v. Keohane*, 877 F.2d 1167 (3d Cir. 1989); *United States ex rel. Sanders v. Arnold*, 535 F.3d 848 (3d Cir. 1976).

In the parole context, this Court recently explained the available state remedies as follows:

> In order to exhaust claims regarding determinations relating to parole revocation decisions in Pennsylvania, a prisoner must seek administrative review of claims by filing a petition for administrative review with the [Parole Board] within thirty days of the mailing date of the [Parole Board's] determination. 37 Pa.Code § 73.1; 42 Pa.C.S. § 7639a. After an administrative appeal to the [Parole Board], a petitioner must present his claims to the Pennsylvania Commonwealth Court. *See* 42 Pa.C.S.A. § 763(a); *Bronson v. Pennsylvania Board of Probabtion and Parole*, 421 A.2d 1021 (1980). If dissatisfied with the result, petitioner must then file a Petition for Allowance of Appeal with the Pennsylvania Supreme Court. *See* 42 Pa.C.S.A. § 724; *McMahon v. Pennsylvania Board of Probation and Parole*, 470 A.2d 1337 (1983).

*Taylor v. Nish*, No. 1:11-CV-0642, 2013 WL 4781724, at *4 (M.D. Pa. Sept. 5, 2013)(Conner, C.J.); *see also Alford v. Pennsylvania Board of Probation and Parole*, No. 3:12-CV-2616, 2013 WL 4080007, at *6 (M.D. Pa. Aug. 13, 2013)(Blewitt, Mag. J.)(same); *Brown v. Pennsylvania Board of Probation and Parole*, No. 3:11-CV-0443, 2011 WL 3667561, at *5 (M.D. Pa. Aug. 22, 2011)(Blewitt, Mag. J.).

In the case *sub judice*, respondent contends that Valentine never appealed his parole revocations, and Valentine does not deny this. Furthermore, there is nothing in the record, or on Valentine's state court docket sheet, revealing that he took any of the required steps to have his revocations reviewed. As such,

Valentine has not exhausted his state court remedies and the time to do so, even on the most recent revocation, in March 2014, has expired.

Thus, in addition to failing to exhaust his state remedies, Valentine's failure to timely present his claims at the state level constitutes an independent and adequate state ground sufficient to support a procedural default of his claims. *Taylor*, 2013 WL 4781724, at *4 (citing *Barnhart v. Kyler*, 318 F.Supp.2d 250 (M.D. Pa. 2004)).  As discussed, *supra*, the merits of procedurally defaulted claims cannot be reviewed unless the petitioner demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if a court does not review the claims.  *McCandless*, 172 F.3d at 260.

Respondent did not address this aspect of Valentine's claims, and while this Court has the *sua sponte* authority to address the procedural default, and whether Valentine can overcome it, *see Day v. McDonough*, 547 U.S. 198, 206 (2006)(stating that the issue remains open but that the Court of Appeals have unanimously held that, in appropriate circumstances, courts, on their own initiative, may raise a petitioner's procedural default), we decline to do so at this time.  We decline to address this issue primarily because the record before the Court is barren.  For example, we do not know whether the Parole Board ever apprised Valentine of his administrative appellate rights, *cf. Brown*, 2011 WL

14

3667561, at *6, or whether his appointed counsel at the *Gagnon I* hearings rendered constitutionally ineffective assistance in handling any potential appeals. Thus, in the interest of justice, Valentine's claims relating to his parole revocations, which have not been exhausted and are obviously defaulted, should not yet be dismissed; instead, the parties should be provided with an opportunity to address this aspect of Valentine's parole-revocation claims.

In a similar vein, we recognize that Valentine's parole-revocation claims stemming from his revocations in 2012 might be barred by the statute of limitations. Rather than making a recommendation on this point, we believe that the Court should also provide the parties with an opportunity to address the habeas corpus statute of limitations and doctrine of equitable tolling in relation to these particular claims. Respondent's motion to dismiss, therefore, should be granted in part and denied in part.

### B. Valentine's DUI Sentence.

The only item left to discuss is Valentine's challenge to his sentence for DUI. This aspect of Valentine's claim was not addressed by the respondent, and, as discussed, likely for good reason. Nevertheless, unlike the parole revocations

that occurred at the beginning and end of 2012, it is glaringly obvious here that any attack on Valentine's DUI sentence would be untimely.[4]

Valentine was sentenced for DUI on August 11, 2010, after he pleaded guilty. From there, Valentine could have filed a direct appeal, but he didn't. Thus, his conviction became final on or about September 13, 2010. *See* Pa.R.A.P. 903 (notice of appeal shall be filed within 30 days after entry of the order from which the appeal is taken). Now, nearly three and a half years later, Valentine files a habeas corpus petition in federal court attacking said sentence; his first federal petition. Under the one-year statute of limitations, Valentine's petition is plainly barred.

In addition, there is no evidence that Valentine exercised due diligence in filing this claim in federal court. In fact, Valentine's state-court docket sheet reveals that he never even attempted to challenge his sentence in state court. Thus,

---

[4]      In *Day*, 547 U.S. at 210, the Supreme Court stated that "before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions" on the statute of limitations issue. There, however, the Court was faced with a situation where the respondent had already filed its answer to the habeas corpus petition. In this case, however, respondent has not yet filed an answer or addressed the statute of limitations. Rather, we deferred the respondent's answer to a resolution of its motion to dismiss for Valentine's failure to exhaust. Thus, the procedural posture of this case is different from the one in *Day*. Furthermore, Valentine's claim regarding his DUI sentence was not readily apparent from the face of his habeas petition. Thus, given these facts, the Court essentially remains in a position, under Rule 4 of the Habeas Corpus Rules, to *sua sponte* raise and address the statute-of-limitations issue without the need to hear from the parties on this point.

this is the only known filing in which Valentine has attacked his sentence within the last four years.  Under these circumstances, Valentine would not be entitled to equitable tolling because he has not exercised due diligence.  Accordingly, Valentine's claim aimed at the validity of his DUI sentence should be dismissed as untimely.

## IV.   <u>Recommendation</u>.

For the foregoing reasons, **IT IS RECOMMENDED** that:

(1) Respondent's motion to dismiss (*Doc.* 10) be **GRANTED IN PART** and **DENIED IN PART**:

 a.  The motion should be **GRANTED** to the extent that the Court finds that Valentine failed to exhaust his parole-revocation claims; and

 b.  The motion should be **DENIED** to the extent that respondent seeks dismissal of Valentine's parole-revocation claims.  Rather, the Court should provide the parties with an opportunity to address the procedurally defaulted claims, as discussed in this Report.

(2) Valentine's claim attacking the constitutionality of his DUI sentence should be **DISMISSED** as untimely.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen  (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **22nd** day of **September, 2014**.

***S/ Susan E. Schwab***
Susan E. Schwab
United States Magistrate Judge
